The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* PARAMOUNT PUBLIX CORP. (No. 3809)[1]

---

[1] T. D. 47453.

United States Court of Customs and Patent Appeals, December 24, 1934

*Joseph R. Jackson,* Assistant Attorney General (*William H. Futrell* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown, Fred J. Carter,* and *E. F. Blauvelt* of counsel) for appellee.

[Oral argument December 10, 1934, by Mr. Folks and Mr. Blauvelt]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is a machine weighing about four or five hundred pounds which reproduces motion pictures by printing on a blank film the picture which is on a developed film. The machine was not shown to the trial court or to this court. Two photographs, representing front and back views of this machine were received in evidence as Illustrative Exhibits A and B, which exhibits are printed in the record in connection with the opinion of the trial court. Exhibit B is reproduced herewith. The machine is described by the witness who testified for the importer, and its uses and characteristics, as shown by the testimony of said witness, are so well set out by the trial court that we can do no better than to quote from its opinion as follows:

The witness's testimony as to the machinery depicted in illustrative exhibits A and B is as follows:

Q. Now, will you describe the component parts of the machinery imported as illustrated by illustrative exhibits A and B?— A. That is composed of a projection machine and a camera. * * * The camera is located practically under the reel shown on the bracket.

    *        *        *        *        *        *        *

Q. Is the reel now marked "1", Doctor?—A. Yes, sir.

Q. What portion of the picture represents the camera?—A. Directly in the center over the pedestal.

Q. Would you put a numeral "2" at one extremity and the numeral "3" at the other extremity? (The witness marked "2" and "3" as directed.)

    *        *        *        *        *        *        *

Q. Of what does the camera consist?—A. The camera consists of a light-type box with a lens at one end and a means for holding and advancing the film at the other end.

Q. Is that camera as contained in this imported merchandise a complete machine in itself or a complete camera in itself?—A. Yes, sir; it is a complete unit.

Q. What other component parts are there in the imported merchandise?—A. There is a projector.

Q. Will you mark that with the letters "4" and "5", please? (The witness marked "4" and "5" as directed.)

Q. What are the parts contained in the projector?—A. The projector contains a light-type housing and the lens in one end and a film-advancing unit at the other end.

Q. Is that a complete projector in itself?—A. Yes, sir.

Q. What other parts are contained in this machine besides those you have already described?—A. There is an illuminating source used in connection with the projector.

Q. Would you mark that "6"?—A. Yes. (The witness marked "6" as directed.)

    *        *        *        *        *        *        *

Q. What other parts?—A. And a means for controlling the light on the projector.

Q. What do you mean by "controlling the light"?—A. Varying its intensity.

Q. Would you mark that "7"? (The witness marks "7" as instructed.)

Q. What other parts are there?—A. And an electric motor for driving the entire mechanism. * * * That is located within the base.

Q. Is it apparent in the picture?—A. The pulley and belt are in sight. * * * (The witness marks this part of the apparatus with the number "8".)

Q. Are there any other parts * * *?—A. Those are the essential parts. * * * There is a blower that is used to cool the lamp house down. * * * There is a rotating prism, which is associated with the film-advancing means within the projector; and there is a mirror that receives the image from the projector, and which is photographed by the camera.

As to the use of this merchandise the witness testified: "It makes a copy of one film on another film of the same size." The method of accomplishing this result is as follows:

A developed, finished film is threaded into the projecting end of the machine, and by means of the light in the lamp house it is projected through the lens onto a mirror, and this image is received by a lens in the camera and recorded on an unexposed film that has been previously threaded into the camera.

It was further testified that the image placed on the unexposed film in the camera is an exact duplicate of the image which is run through the projector on the developed film, and the process employed in still photography when an enlargement of a photograph is made by means of an enlarging camera is "essentially the same as the one performed by this machine"; that the term "printing" as commonly used by people engaged in photography, covered "the process performed by the imported machinery"; and that the merchandise in question cannot be used for any other purpose than the printing of films.

The witness further testified that this merchandise as imported contained a source of light, a device for varying the intensity of that light, and an electric motor, which is consolidated in the base of the machine; but those devices are not either collectively or individually essential features of the machine, which "will work just the same without those refinements"; that the results obtained would be the same without them, but "you would simply lack speed"; that they are only used for speed.

The collector classified the main portion of the importation under paragraph 228 (b), Tariff Act of 1930, and assessed the same with duty at 45 per centum ad valorem, and stated that the same was "projection apparatuses and parts thereof." He classified the remaining portion, the tripod (which was covered by a separate entry), as "manufactures of metal" at 45 per centum ad valorem under the provisions of paragraph 397 of the same act.

The trial court held that the collector's classification in both entries was erroneous, and that the merchandise, illustrated by Exhibits A and B, was dutiable at 25 per centum ad valorem under paragraph 372 of said act as printing machinery, as claimed by the importer, and that the tripod was a part of a camera and dutiable at 20 per centum ad valorem under paragraph 1551 of said act.

The Government appealed here from said decision of the trial court, but here abandons its appeal as to the tripod. As to the machine exclusive of the tripod, the Government contends that it is dutiable under the provision "photographic or projection lenses * * * frames and mountings therefor, and parts of any of the foregoing * * *" in said paragraph 228(b), under which paragraph it was classified by the collector.

The importer in its protest claimed said merchandise to be covered by and dutiable under paragraph 372 at 25 per centum ad valorem as printing machinery, or at 27½ per centum ad valorem as "all other machines"; under paragraph 353, the electrical paragraph, at 35 per centum ad valorem; or under paragraph 1551 which provides for "photographic cameras and parts thereof, not specially provided for", at 20 per centum ad valorem.

The pertinent provisions of the paragraphs involved are as follows:

PAR. 228(b). Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 372. * * * printing machinery (except for textiles), bookbinding machinery, and paper-box machinery, 25 per centum ad valorem; * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts * * *.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: *Provided*, That if the photographic lens is the component of chief value of the camera or of the part in which it is imported, such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately; * * *.

In view of the fact that the dutiable status of the tripod is not a question to be decided here, we will hereinafter make reference to the machine without having the tripod in mind.

The Government, in support of its contention that the machine is dutiable under paragraph 228(b), relies upon the decisions of this court in the cases of *United States* v. *Massce & Co.*, 20 C. C. P. A. (Customs) 210, T. D. 45993; *American Holding Corp. et al.* v. *United States*, 18 C. C. P. A. (Customs) 275, T. D. 44449; and *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. This phase of the case seems to require first consideration.

We are not in accord with the assessment of the collector or with the view of the Government that the motion-picture reproducing apparatus at bar is provided for in paragraph 228(b). Our decision in this particular requires not only a consideration of the three cases above cited, but of this court's decision in *United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, T. D. 36490.

In the *Massce & Co.* case, *supra*, we had before us heads of projection machines and film-gate magazine heads which were parts of projection apparatuses, imported under the Tariff Act of 1930. We there discussed the effect of certain changes in the Tariff Act of 1930 from the Tariff Act of 1922, and held, as we had theretofore held in the *American Holding Corp. et al.* case, *supra*, that the term "frames and mountings therefor" related back to "projection lenses", and that the said changes made by Congress in the Tariff Act of 1930 did not require a holding different in this particular from that in the *American Holding Corp. et al.* case. Having decided the above issue on the construction of the paragraph, the court, without discussing the matter, held that the involved merchandise was dutiable as a frame or mounting for projection lenses.

In the *American Holding Corp. et al.* case, *supra*, the article before this court consisted of a certain mechanical device which was stated to be the essential units or parts of a motion-picture projection mechanism, and consisted of a metal frame to which were attached "sprockets or shafts", the function of which was to move the film from the upper magazine (not involved) in a downward direction, intermittently through the rays of light to the lower magazine (not involved), and a shutter unit, which was synchronized with the intermittent sprockets in such a manner as to control the passage of the rays of light from the lamp house to the screen.

It was agreed in that case that the device was an essential unit or part of a motion-picture projection device and that without its presence and aid a motion-picture projection lens could not perform its proper function. This court held, basing its opinion almost entirely upon our holding in the *United States* v. *American Express Co.* case, *supra*, that the importation was "frames and mountings" for projection lenses and provided for under paragraph 228, Tariff Act of 1922. It will be noted that in that case the light housing, film holder, motors and many other important features of the machine at bar

were absent, and many of the important features of a motion-picture projecting machine were absent. No lens accompanied the importation. It is apparent, however, from the decision that this court felt that the issue decided in that case was controlled by our decision in the *American Express Co.* case, *supra*.

In the *American Express Co.* case, *supra*, we had under consideration parts of a machine known as a "pathescope" which had been classified by the collector as frames and mountings for optical instruments and assessed for duty at 35 per centum ad valorem under paragraph 93 of the Tariff Act of 1913. The trial court sustained the protest of the importer and held the merchandise dutiable under paragraph 94 of said act, which paragraph read as follows:

94. Surveying instruments, telescopes, microscopes, photographic and projection lenses, and frames and mountings for the same, 25 per centum ad valorem.

The merchandise before the court in that case was entirely different from the merchandise at bar. The merchandise there was, according to the opinion: "Designed to serve as a support for the motive machinery, film reels, lamp house, and projection lenses of a moving-picture machine." The court held that this supporting structure, styled a metal support, was a frame or a mounting within the meaning of the paragraph.

Regardless of whether this decision should be authority for holding that the supporting parts and associated appurtenances of a projection lens in a complete projecting apparatus should be regarded as frames and mountings for projection lenses, we are of the opinion that our holding in that case does not require that we hold in the case at bar that the entire machine, consisting as it does of a complete projecting apparatus, a complete camera or picture-taking apparatus, and other important features, should be regarded either as a projection lens and frames and mountings for such lens, or as "photographic or projection lenses" and "frames and mountings therefor."

It has been suggested that our holding in the *Clay Adams Co., Inc.*, case, *supra*, is controlling of the issue here. In that case we had before us a machine which was the combination of a microscope and a projecting apparatus, which machine embodied the principle of a microscope which magnified the specimen, and a projecting apparatus which, through the use of a lens, projected the magnified image onto a sheet of paper. We held there that since Congress had provided for projection lenses, and frames and mountings therefor, and also for microscopes in the same paragraph, when separately imported, it must also have contemplated the classification thereunder of the two units when combined and imported together.

While the decision in the *Clay Adams Co., Inc.*, case, *supra*, may be some authority on the subject of what may be regarded as frames and mountings for projection lenses, it certainly is no authority for

holding that a combination of projection apparatus and a camera, together with motors, reel holders, and other synchronizing features should be held dutiable under the provision for "photographic or projection lenses * * * frames and mountings therefor and parts" thereof. In this connection we think it is only necessary to point out that paragraph 1551 of the Tariff Act of 1930 quoted above specifically provides for "photographic *cameras* and parts thereof, not specially provided for". (Italics ours.) There is no showing in this record that the lens of the camera, which is a component part of the combined machine at bar, is the component of chief value of the camera so as to take a complete camera out of said paragraph 1551 and put it in said paragraph 228 (b).

It is our view that the decided cases above referred to should not be so applied as to require that everything connected with photographic or projection lenses be regarded as parts of such lenses or as frames and mountings therefor. If Congress had meant for a complete moving-picture projecting apparatus, including a motor, reels, and all its parts to be dutiable under paragraph 228 (b), it would have been an easy matter to have placed in the paragraph language comparable to that used by the collector in characterizing the involved merchandise as "projection apparatuses and parts thereof". (Note the special provision in paragraph 1551, *supra*.) Having failed to do so, we are not inclined to indulge in a more liberal construction of the provision under consideration, in the direction contended for by the Government, than is indicated in such decisions. We, therefore, for the reasons above stated, hold that the complete projecting apparatus, when combined with the complete photographic camera, together with the associated parts, constitutes a machine not provided for under said paragraph 228 (b), *supra*.

Appellant's contention that the importation should be held to be a printing machine under the provisions of paragraph 372, and dutiable at only 25 per centum ad valorem, must next be considered. This question involves not only a consideration of the context of the paragraph, but of the legislative history connected therewith. It will be noticed that the paragraph provides for "printing machinery (except for textiles), bookbinding machinery, and paper-box machinery, 25 per centum ad valorem * * *".

The testimony in this case shows that the image on a developed film projected onto a mirror is photographed onto an undeveloped film and that this process is styled "printing" by those who use the term in connection with photography. It is a matter of common knowledge that the term "printing" is often applied to the act of transferring, by the agency of light, to a sensitized positive, an image

which is on a negative. We quote from Webster's New International Dictionary (1933):

printing. 1. Act, art, or practice of impressing letters, characters, or figures on paper, cloth or other material; the business of printing, including typesetting and presswork, with their adjuncts; typography.

2. *Photog.* Act or art of producing a positive photographic picture from a negative by the use of sunlight or other actinic rays on sensitized paper; act or art of making photographic prints.

3. *Ceram.* Act or art of decorating pottery by means of transfer papers printed with mineral colors or of gelatin sheets printed in oil.

4. Paper used for printing on.

In the comparable paragraph 372 of the Tariff Act of 1922, there was a provision for "printing presses not specially provided for * * * 30 per centum ad valorem." There was also in the same paragraph provision made for certain specifically named textile machinery at certain rates of duty, and also a provision for "all other similar textile machinery or parts thereof" which bore a 40 per centum ad valorem duty. There was no specific provision in the act for "bookbinding machinery and paper-box machinery", and according to the Supplement to Tariff Information on Items in Tariff Bill of 1930 (H. R. 2667) Subject to Conference, page 221, prepared by the Tariff Commission, bookbinding and paper-box machinery were classified with "all other machines * * * not specially provided for." It was also stated in the above Supplement to Tariff Information that: "The exclusion of machinery for printing textiles avoids conflict in classification with the provisions for textile machinery". We find in the same volume, page 221, the following:

* * * Imports of printing presses are said by importers to consist chiefly of a special type of automatic envelope press, known as the Heidleberg press, which is not made in the United States.

Requests for lower duties on other printing machinery and paper-box and bookbinding machinery are based on the low ratio of imports to production and on statements of prices, wages, and efficiency in Germany.

The above supplement to tariff information was printed upon the instigation of the Committee on Ways and Means, House of Representatives, and the Committee on Finance, United States Senate, for the information of members of the House and Senate and was prepared after the bill had passed the House and Senate. In said supplement, at page 221, is also found the statement:

The Senate specially provides for printing, bookbinding, and paper-box machinery at 25 percent ad valorem, the same rate as on machines, n. s. p. f.

Statistics of domestic production, imports, and exports, follow: * * *.

The statistics are based on the following items: Printing presses; other printing machinery, except typesetting; book-binding machinery; and paper-box machinery. When the bill passed the House, the provision for printing presses was the same as it was under the

Tariff Act of 1922, and the change above noted was first made in the Senate Committee on Finance.

When the Committee on Finance of the United States Senate had under consideration the change above noted, parties interested in bringing about such a change were heard by such committee. (Hearings, Tariff Act of 1929, Volume III, page 946 *et seq.*) Such hearings show that the committee made close inquiry of the interested parties as to what the changes would mean if made and a colloquy involving that question took place between one of the interested parties and a member of the committee, which we will not quote here.

This circumstance has been called to our attention as being a part of the legislative history of the provision. While such subject matter may be related to the enactment of the provision, we feel certain it should not be resorted to for the purpose of showing the intent of the legislature. We think it would be an unsafe practice for courts to permit such a consideration to be controlling since the enactment of the provision in the language before us might have been with an intent wholly different from that indicated by the witnesses.

From a consideration of the context of the provision in controversy and such legislative history of the same as we are justified in taking into account, we are convinced that by the change made in the bill as it came from the House, it was intended to include within the provision not only printing presses, which the prior act had included, but to also include book-binding machinery, paper-box machinery, and other printing machinery which is associated with typography. We do not think Congress intended by the provision in controversy to in any way affect photographic equipment and did not have such articles in mind when said provision was enacted into law.

It is here argued, in substance, that the parenthetical words "except for textiles" found in the provision under consideration, warrant the conclusion that by the use of such term Congress intended to use "printing machinery" in a broader sense than is contended for here by the Government; that it is fair to infer that Congress believed that if it did not expressly exclude textile-printing machinery, it might be regarded as included within the provision, and that it was making provision for textile machinery elsewhere and desired that it be there classified for duty purposes. There is a distinct difference between the process of textile printing and that of photographic printing. To print textiles, ink or color is directly applied to the textile through the means of rollers, blocks or other impressing devices. The operation is quite similar to the art of printing letters and characters upon paper. That is not true with photographic printing. An image on a negative is transferred to a sensitized positive not by direct contact, but by the action of light, and we feel certain that Congress did not have this process in mind when it used the term "printing machinery".

It will not be necessary for us to pass upon the merits of the claim in the protest that the merchandise is dutiable under paragraph 353, the so-called electrical paragraph. The importer, in this court, has abandoned this claim. We find in appellant's brief the following:

The testimony shows that the electrical portions of the imported machinery are not essential features (R. 15, 18). In *A. N. Khouri & Bro. v. U. S.* 22 C. C. P. A. (Customs) 28, T. D. 47037, this court held that an electric lamp was not within the meaning of paragraph 353 covering electrical articles.

We think that the provision of paragraph 372, *supra*, for "all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem", aptly describes the merchandise at bar and that the same is dutiable thereunder.

It follows that the judgment of the United States Customs Court, insofar as it holds the merchandise in controversy here to be dutiable as printing machinery, must be reversed. The claim of the importer that the same was dutiable as "all other machines" under paragraph 372 should have been sustained. In all other respects, the trial court's judgment should be affirmed. The judgment of the trial court is *modified* to the extent above indicated, and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.